IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROSIE HARRIS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 2:16-cv-636-TFM [wo] |
| ACCC INSURANCE COMPANY, *et al.*, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This action is assigned to the undersigned magistrate judge to conduct all proceedings and order entry of judgment by consent of all the parties (Docs. 17-19, filed 9/1/16) and 28 U.S.C. § 636(c). Pending before the Court are Defendants' Motion for Summary Judgment and Memorandum Brief in Support Thereof (Doc. 26, filed 2/23/17). The motion has been fully briefed and is ripe for review. Having considered the motion and relevant law, the Court finds the motion for summary judgment is due to be **GRANTED**.

### I. JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as there is diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

### II. BACKGROUND AND PROCEDURAL BACKGROUND

**A. Procedural Background**

Plaintiff Rosie Harris ("Harris" or "Plaintiff") filed her original complaint in the Circuit

Court of Lowndes County, Alabama on September 23, 2015. *See* Doc. 1, Atch 1, Complaint. Harris is an Alabama citizen. The suit alleged breach of contract and bad faith against Defendants ACCC Insurance Company, ACCC Claims, Central Alabama Insurance Agency, Inc., and Steve Cole. The allegations against all Defendants involved solely Alabama state law issues and relate to the denial of Plaintiff's insurance claim for the loss of her vehicle.

Central Alabama Insurance Agency, Inc. and Steve Cole were both considered Alabama citizens. As such, the case was not removable due to lack of diversity in citizenship. On July 11, 2016, Harris filed a second amended complaint which added Defendant James A. Potts ("Potts") as a defendant and asserted two Alabama state law claims against him. Specifically, the claims against Potts were Interference with a Contractual Relationship and Outrage. *See* Doc. 1, Atch 10, Second Amended Complaint. As part of the claims process, the ACCC Defendants hired Defendant Potts – a licensed Alabama attorney – to represent ACCC Insurance for the limited purposes obtaining an examination under oath from Plaintiff Harris. Defendant Potts sent Plaintiff numerous letters which attempted to schedule the examination under oath and required her to bring certain documents to the examination. Plaintiff refused to attend the examination. The ACCC Defendants denied her car insurance claim. A few weeks later, Plaintiff filed the instant suit.

On August 2, 2016, shortly after Plaintiff's dismissal of Central Alabama Insurance Agency, Inc. and Steve Cole, Defendants ACC Insurance Company and ACCC Claims Service, Inc. (collectively "the ACCC Defendants") filed a Notice of Removal in this court based on an assertion of diversity jurisdiction. *See* Doc. 1, generally. Specifically, the ACCC Defendants asserted diversity jurisdiction exists in this case because the amount in controversy exceeds the $75,000 jurisdictional threshold and complete diversity of citizenship exists among the "true

parties" when considering Defendant Potts has been fraudulently joined and Defendants Central Alabama Insurance Agency, Inc. and Steve Cole had previously been voluntarily dismissed.

Shortly after removal, Defendant Potts filed a motion to dismiss based on fraudulent joinder and Plaintiff filed a motion to remand. *See* Docs. 5, 11. On November 28, 2016, the Court issued its memorandum opinion denying the motion to remand and granting the motion to dismiss the fraudulently joined Defendant Potts because the claims against him failed as a matter of law. *See* Doc. 20.

The Court turns to the remaining defendants (ACCC Insurance Company and ACCC Claims Service) and claims (Breach of Contract and Bad Faith for Refusal to Pay). The underlying facts of this case are necessarily viewed in favor of the nonmovant plaintiff.

**B.      Underlying Facts and Insurance Policy**

At some point prior to the events below, Plaintiff obtained a personal auto policy from ACCC Insurance Company. The relevant policy is attached to Defendants' summary judgment motion. *See* Doc. 26, Ex. 2. On August 21, 2014,[1] Plaintiff's 2005 Nissan Pathfinder had a mechanical break-down on U.S. Highway 80 around the 103-mile marker near Tyler, Alabama. A friend picked up Plaintiff to give her a ride and she was forced to abandon the vehicle on the roadside shoulder. When she returned around 3 hours later, the vehicle was gone. On August 22, 2014, Plaintiff reported the theft to the Lowndes County Sheriff's Office.[2] *See* Doc. 26, Ex. 1, Alabama Uniform Incident/Offense Report. She further submitted a claim for loss to her

---

[1] Throughout the pleadings and evidence, the date switches between August 21, 2014 and August 22, 2014. In the police incident report, it states August 21, 2014, but the Affidavit of Vehicle Theft completed by Plaintiff states August 22, 2017. However, for the purposes of the analysis, the date is not a *material* fact. The theft occurred on or about August 21, 2014.

[2] The parties also seemingly use the City of Haynesville and Lowndes County Sheriff's Office interchangeably as to which department received Plaintiff's report of theft.

insurer ACCC Insurance Company. *See* Doc. 26, Ex 3, Affidavit of Vehicle Theft.[3]

After she filed her claim, ACCC conducted its investigation and eventually through attorney James Potts ("Potts") asked Plaintiff to submit to an examination under oath ("EUO") on December 14, 2014. *See* Doc. 26, Ex.4. Plaintiff did not attend. Potts sent another letter dated December 29, 2014 scheduling the EUO for February 19, 2015. *See* Doc. 26, Ex. 5. Plaintiff avers that on December 15, 2014, her attorney notified ACCC via fax that he represents the Plaintiff in this matter. *See* Doc. 28, Ex. D. The facts do not make it clear whether Potts received that notification prior to his December 29, 2014 letter. On January 14, 2015, Potts sent a letter rescheduling the February 19, 2014 EUO to March 16, 2015. *See* Doc. 26, Ex. 6. On March 15, 2015, Plaintiff told Potts' assistant that she was being represented by counsel and that she would not be attending the EUO. *See* Doc. 26, Ex. 7. On April 15, 2015, Potts sent Plaintiff and Plaintiff's counsel another letter regarding scheduling the EUO. *Id*. In the letter, Potts states he made several attempts to contact Plaintiff's counsel, but had not heard back. He requests that "[i]f Mr. Hayes is your attorney in this matter, I am requesting that he contact my office immediately to reschedule your examination. If I do not hear from Mr. Hayes in the next ten (10) business days, then I will presume that he is not your attorney in this matter and my office will be in touch with you directly for the rescheduling of your examination." *Id*. On May 5, 2015, Potts sends Plaintiff a letter saying "[s]ince that time, I have tried continuously to get in touch with Mr. Hayes via correspondence and telephone to confirm that he is representing you in this matter. Mr. Hayes has failed and/or refused to confirm that he is your attorney. Therefore, ACCC has no choice but to continue on with its investigation of your theft claim and to deal directly with you regarding the investigation." *See* Doc. 26, Ex. 8. Potts then reschedules the

---

[3] The date on the Affidavit of Vehicle Theft seems to be August 19, 2014. *See* Doc. 26, Ex. 3 at p. 2.

EUO for June 11, 2015. *Id*. Plaintiff did not attend the EUO and consequently her claim was denied on June 19, 2015. *See* Doc. 26, Ex. 9.

It is important to note that Plaintiff references an attached affidavit for her response to the motion for summary judgment. *See* Doc. 28. However, there is no such attached affidavit. Furthermore, despite Defendants clearly noting the missing affidavit in their reply, Plaintiff never supplemented the record. *See* Doc. 29. However, despite the lack of affidavit, the Court will list the supplemental facts here. The Court need not determine for the purposes of the record whether the lack of affidavit is an insurmountable issue because the affidavit simply reiterates the actions that occurred prior to Potts submitting the letters for EUO. *See* Doc. 28, ¶¶ 1-11. The response to summary judgment confirms Plaintiff never submitted to a EUO and instead argues that it was an unreasonable request because Plaintiff had already provided the other information requested by Defendants. *Id*. Instead Plaintiff argues that request for a EUO prolonged the investigation and delayed action in such a manner as to defeat the rights of the Plaintiff by refusing to pay. *Id*. at ¶ 15. Further, Plaintiff avers "there was no reasonably legitimate, arguable or debatable reason for Defendant's refusal to pay. *Id*. at ¶ 16.

The Court has before it the motion for summary judgment, Plaintiff's response, and Defendants' reply. Thus, the motion is fully briefed and ripe for review.

### III. STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. Fed. R. Civ. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 423 Fed. Appx. 955 (11th Cir. Apr. 20, 2011) (quoting *Anderson*). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id.*

The movant bears the initial burden of proof. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." Moore, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510)). The court must view the facts and draw all reasonable inference in favor of the nonmoving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs, Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

### IV. DISCUSSION AND ANALYSIS

There are two claims remaining here for which Defendants move for summary judgment – Breach of Contract and Bad Faith Refusal to Pay against ACCC. However, before turning to the analysis of the claims, the Court finds it important to discuss the backdrop of insurance

principles.[4]

Insurance is a contractual relationship between two parties. On one hand, you have the insured who obtains the policy to guard against the risk of loss up to a certain amount in exchange for a premium payment. The party that provides that policy is the insurer who receives the premium. Thus, the insured may demand payment from the insurer so long as all the conditions stated in the policy are satisfied. If the insured satisfies all those conditions, then the insurer must pay.

In light of that risk-shifting benefit, the insurers in order to protect itself and society, may impose limits on the coverage and require a minimum level of conduct from the insured. The purpose of these limitations and requirements are to safeguard against "moral hazards." Moral hazards generally occur in one of two ways. First, the situation where someone buys insurance intending to cause the loss so he can collect the proceeds. Second, where having insurance causes a person to exercise less care in safeguarding one's property because he knows that the insurer will bear the loss. To combat these moral hazards, insurers may use a variety of tools in the policies. Specifically, insurers may limit the payout to fair market value, exclude certain types of losses, require cooperation from the insured when investigating a loss, employing fraud investigators, and requiring the insured to take certain precautions in protecting and maintaining the property.

Considering this background, the Court now turns to the remaining claims.

**A.   Breach of Contract**

Under Alabama law, "a contract of insurance is essentially like all other contracts, and governed by general rules of contract." *Pate v. Rollison Logging Equip., Inc.*, 628 So. 2d 337,

---

[4]   The Court summarizes the principles here, but directs the parties to the excellent, more detailed analysis done in *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335, 1344-45 (M.D. Ala. 2012), *aff'd* 519 F. App'x 656 (11th Cir. May 20, 2013).

345 (Ala. 1993) (internal citations omitted). To prevail on a breach of contract claim under Alabama law, the plaintiff must establish: (1) the existence of a valid contract binding the parties in the action, (2) its own performance under the contract, (3) the defendant's non-performance, and (4) damages. *Ex parte American Heritage Life Ins. Co.*, 46 So.3d 474, 477 (Ala. 2010) (citing *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 937 (Ala. 2001)); *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)). "General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract." *Drummond Co. v. Walter Industries, Inc.*, 962 So.2d 753, 780 (Ala. 2006). Thus, where an insured fails to comply with a condition precedent to recovery under an insurance contract, the insured cannot sustain a breach of contract claim. *See, e.g., Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 269 (Ala. 1998); *Akpan v. Farmers Ins. Exchange, Inc.*, 961 So. 2d 865, 872 (Ala. Civ. App. 2007).

In the case at hand, the Court looks to the contract. The contract states under "Other Duties" that "[a] person claiming any coverage of this policy must also . . . submit to an examination under oath as often as may be reasonably required." *See* Doc. 26, Ex. 2 at p. 14-15. The operative language in this provision is "must." This makes the act of submitting to an examination under oath a <u>condition precedent</u> to the insured's recovery under the policy. Failure to comply

Despite Plaintiff's attempts to distinguish the situation, this case is virtually identical to the requirements outlined by the Alabama Supreme Court in *Nationwide Insurance*, 745 So. 2d 264. Plaintiff seemingly relies upon an argument which states the insurance company does not have an unfettered right to conduct an EUO and that the request to do so was unreasonable here. Alabama case law is clear. The Alabama Supreme Court concluded that "[b]ecause it [was]

undisputed that [the insurer] requested that [the insured] submit to an examination under oath and that [the insured] failed to do so before filing this action, . . . [the insured] failed to comply with a condition precedent to recovery under the contract." *Id*. at 269 (affirming summary judgment in favor of the insurer). The case cited by Plaintiff, *Livingston v. Auto Owners Ins. Co.*, 582 So. 2d 1038 (Ala. 1991) was well before *Nationwide Insurance* and also did not address examinations under oath as conditions precedent. As such, it is not analogous. Further, Plaintiff's arguments that she had already submitted enough information does not overcome the condition precedent of the EUO. She argues that making recorded statements over the phone should be sufficient. However, there is no indication that these statements were made under oath, nor does Plaintiff cite to caselaw which would negate the contractual requirement regarding a EUO being a condition precedent to the payment of a claim.

In addition to the cited Alabama law, federal courts from all three districts in Alabama have addressed this very issue when applying Alabama law in the context of a refusal to submit to an EUO. *See, e.g., Morton v. Auto Ins. Co.*, 102 F. Supp. 3d 1248 (N.D. Ala. 2015); *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335 (M.D. Ala. 2012), *aff'd* 519 F. App'x 656 (11th Cir. May 20, 2013); *Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343 (S.D. Ala. 2010).

The facts are clear that Plaintiff failed (and even refused) to comply with the Defendants' request to submit to an EUO. From the original letter on November 12, 2014 through March 15, 2015, Plaintiff failed to appear for the December 17, 2014 or March 16, 2015 scheduled examinations under oath. Then when she retained counsel, neither counsel nor Plaintiff responded to the attempts to reschedule the EUO. Further, she refused to attend the final attempt by Defendants to schedule the EUO on June 11, 2015. Due to Plaintiff's refusal to comply with the EUO, her claim for a breach of contract fails as a matter of law, summary judgment is due to

undisputed that [the insurer] requested that [the insured] submit to an examination under oath and that [the insured] failed to do so before filing this action, . . . [the insured] failed to comply with a condition precedent to recovery under the contract." *Id*. at 269 (affirming summary judgment in favor of the insurer). The case cited by Plaintiff, *Livingston v. Auto Owners Ins. Co.*, 582 So. 2d 1038 (Ala. 1991) was well before *Nationwide Insurance* and also did not address examinations under oath as conditions precedent. As such, it is not analogous. Further, Plaintiff's arguments that she had already submitted enough information does not overcome the condition precedent of the EUO. She argues that making recorded statements over the phone should be sufficient. However, there is no indication that these statements were made under oath, nor does Plaintiff cite to caselaw which would negate the contractual requirement regarding a EUO being a condition precedent to the payment of a claim.

In addition to the cited Alabama law, federal courts from all three districts in Alabama have addressed this very issue when applying Alabama law in the context of a refusal to submit to an EUO. *See, e.g., Morton v. Auto Ins. Co.*, 102 F. Supp. 3d 1248 (N.D. Ala. 2015); *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335 (M.D. Ala. 2012), *aff'd* 519 F. App'x 656 (11th Cir. May 20, 2013); *Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343 (S.D. Ala. 2010).

The facts are clear that Plaintiff failed (and even refused) to comply with the Defendants' request to submit to an EUO. From the original letter on November 12, 2014 through March 15, 2015, Plaintiff failed to appear for the December 17, 2014 or March 16, 2015 scheduled examinations under oath. Then when she retained counsel, neither counsel nor Plaintiff responded to the attempts to reschedule the EUO. Further, she refused to attend the final attempt by Defendants to schedule the EUO on June 11, 2015. Due to Plaintiff's refusal to comply with the EUO, her claim for a breach of contract fails as a matter of law, summary judgment is due to

be granted on this claim.[5]

**B.     Bad Faith Refusal to Pay**

In Alabama, to prove the tort of bad-faith refusal to pay a plaintiff must prove: "(a) a breach of insurance contract, (b) the refusal to pay the claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurers intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (internal quotation marks omitted and citation omitted). In the instant case, the court has already determined that ACCC has not breached the insurance contract; therefore, Plaintiff cannot meet the first element. In light of this finding, the Court must grant summary judgment on the bad faith refusal to pay claim.

**C.     ACCC Claims Service, Inc.**

Because both claims fail as a matter of law, the Court need not address Defendants' argument as to whether the Plaintiff failed to state a claim and later abandoned the claim against ACCC Claims Service. Since the claims against the ACCC entities fail as a matter of law, that argument is rendered moot.

V. CONCLUSION

Pursuant to the foregoing Memorandum Opinion, the Court grants *Defendants' Motion for Summary Judgment* (Doc. 26). An appropriate judgment will be entered.

---

[5]     Plaintiff argues that all information should have gone to her attorney after the December 15, 2014 fax to ACCC. However, whether or not Potts inappropriately contacted a represented person is not an issue before this Court. Nor is the issue of whether Hayes improperly refused to respond to Potts' correspondence regarding the EUO. Rather, both issues would be ethics issue that play no role in this Court's determination. Ultimately, the record is clear that Plaintiff herself <u>was</u> aware of the correspondence and chose not to attend the EUO. Further, she would have been able to make her attorney aware of the EUO scheduling letters.

DONE this 20th day of September, 2017.

                                       /s/ Terry F. Moorer
                                       TERRY F. MOORER
                                       UNITED STATES MAGISTRATE JUDGE